UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **HASAN SHEIKH**, <br> Plaintiff, <br> v. <br> **LORETTA LYNCH, UNITED STATES ATTORNEY GENERAL, ET AL.** <br> Defendants. | Case No. 15-cv-01873-YGR <br><br> **ORDER GRANTING MOTION TO DISMISS** <br> Re: Dkt. No. 17 |

Pending before the court is the government's motion to dismiss plaintiff Hassan Sheikh's second amended complaint seeking judicial review of the United States Citizenship and Immigration Services ("USCIS")'s decision to deny his application for naturalization under Federal Rule of Civil Procedure 12(b)(1). The government principally argues that Sheikh failed to exhaust his administrative remedies. (Dkt. No. 17.) Sheikh opposes, arguing further administrative appeal would be futile due to a purported conflict between an applicable regulation and its governing statute. (Dkt. No. 18.)

Having carefully considered the papers submitted and the pleadings in this action, oral argument at the October 20, 2015 hearing, and for the reasons set forth below, the Court hereby **GRANTS** the motion and **DISMISSES** the action **WITHOUT PREJUDICE**.

**I.   BACKGROUND**

On February 17, 2015, the San Francisco branch of USCIS denied Sheikh's application for naturalization. (Dkt. No. 14, Second Amended Complaint ("SAC") ¶ 1.)[1] Sheikh is a citizen and national of Pakistan lawfully admitted to the United States for permanent residence. (*Id.* ¶ 2.) He

---

[1] For purposes of this motion, the allegations in the complaint are taken as true. *See Colony Cove Props. v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011)

filed his Form N-400 application for naturalization on October 21, 2014.  (*Id.* ¶ 9.)  A letter from USCIS to Sheikh attached to Sheikh's SAC states that his application for naturalization was denied because, among other reasons, he disrupted his continuity of residence during the five years preceding the filing date of his application with a trip to Pakistan from March 3, 2013 to September 3, 2013.  (Dkt. No. 14-1 at 2; *see also* SAC ¶ 16.)  Further, the letter states that the trip from March 3, 2013 to September 3, 2013 constituted an absence from the United States of "183 days."  (Dkt. No. 14-1 at 2).

Sheikh timely filed a complaint invoking the Court's jurisdiction under 8 U.S.C. § 1421(c), which governs judicial review of denied naturalization applications.

**II.    LEGAL STANDARD**

A party seeking dismissal of a claim based on lack of subject matter jurisdiction under Rule 12(b)(1) may make a facial challenge resting on the allegations of the complaint, or may point to evidence beyond the pleadings.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  This motion constitutes a facial challenge.  When ruling on a motion to dismiss, the Court may consider "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  *Colony Cove Props. v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011) (internal quotations and citations omitted).

Subject matter jurisdiction cannot be waived, and the issue of lack of jurisdiction can be raised at any time by either party or the court.  *See Attorneys Trust v. Videotape Computer Products, Inc.*, 93 F.3d 593, 594–95 (9th Cir. 1996).  Because federal courts are presumed to lack subject matter jurisdiction, the party asserting jurisdiction has the burden of establishing that subject matter jurisdiction exists.  *See Vacek v. United States Postal Service*, 447 F.3d 1248, 1250 (9th Cir. 2006).  A motion to dismiss for failure to exhaust administrative remedies may be brought as a 12(b)(1) motion.  *See, e.g. Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1211 (9th Cir. 2012).  A plaintiff's failure to exhaust administrative remedies deprives the Court of subject matter jurisdiction when the governing statute mandates exhaustion.  *See Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).

### III. DISCUSSION

#### A. Statutory Framework

When an initial application for naturalization has been denied, the applicant may request review of the decision before an immigration officer. *See* 8 U.S.C. § 1447(a). The applicant must exhaust this administrative procedure before filing suit in district court. *See* 8 U.S.C. 1421(c); 8 C.F.R. § 336.9(d). Upon exhaustion, the applicant may seek de novo review before the district court. *See* 8 U.S.C. 1421(c).[2]

#### B. Exhaustion of Administrative Remedies

The parties agree that Sheikh did not avail himself of his statutory right under 8 U.S.C. § 1447(a) to an administrative appeal of the denial of his application for naturalization. Instead, he filed a complaint before this Court under 8 U.S.C. § 1421(c). The Court must (i) determine whether exhaustion is prudential or jurisdictional in the context of section 1421(c), and if it is prudential, (ii) decide whether Sheikh must exhaust in the instant case.

##### 1. Legal Framework

The doctrine of exhaustion of administrative remedies requires one who challenges an agency decision to exhaust all of his or her administrative remedies before seeking judicial review. *See Laing v. Ashcroft*, 370 F.3d 994, 997-98 (9th Cir. 2004). Exhaustion serves two main purposes: protecting administrative agency authority and promoting efficiency. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Exhaustion is the general rule: "courts should not topple over administrative decisions unless the administrative body not only has erred, *but has erred against objection made at the time appropriate under its practice*." *Id.* (internal citation and quotations omitted, emphasis in original).

---

[2] 8 U.S.C. § 1421(c) provides:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with Chapter 7 of Title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

3

1    There are two types of exhaustion: jurisdictional, where it is explicitly required by statute, 2 and prudential, where it remains the general rule but a court may exercise its discretion and 3 decline to require exhaustion. *See Puga*, 488 F.3d at 815 ("Administrative exhaustion can be 4 either statutorily required or judicially imposed as a matter of prudence.") (citing *Noriega-Lopez v.* 5 *Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). Even where a particular statute does not specifically 6 require exhaustion, courts may prudentially require exhaustion of administrative remedies. *See* 7 *Laing*, 370 F.3d at 997-98. A determination on the nature of the exhaustion requirement in the 8 context of a particular statute is significant. If a court finds exhaustion jurisdictional, and the 9 plaintiff has not exhausted, that court may not retain jurisdiction over the case. *See Puga*, 488 10 F.3d at 815.

11   However, if a court determines that exhaustion is prudential, that court may elect to retain 12 jurisdiction over the case if the circumstances of the case fall within an exception to the general 13 rule requiring exhaustion. *See McCarthy v. Madigan*, 503 U.S. 140, 146 (1992). Where 14 exhaustion is prudential, courts are guided by two competing sets of concerns. *See id*. at 144-46. 15 On the one hand, requiring exhaustion aims to preserve the appropriate balance between the 16 judicial branch and the agencies of the executive branch, promoting judicial and administrative 17 efficiency. *See id.* at 145-46. On the other hand, "federal courts are vested with a 'virtually 18 unflagging obligation' to exercise the jurisdiction given them. . . . Accordingly, this Court has 19 declined to require exhaustion in some circumstances even where administrative and judicial 20 interests would counsel otherwise. In determining whether exhaustion is required, federal courts 21 must balance the interest of the individual in retaining prompt access to a federal judicial forum 22 against countervailing institutional interests favoring exhaustion." *Id.* at 146 (internal citations 23 omitted). For instance, this exception may be appropriate where it would be futile to require 24 exhaustion. *See, e.g. Coyt v. Holder*, 593 F.3d 902, 905 (9th Cir. 2010) (waiving exhaustion 25 requirement where statute and its implementing regulation were purportedly in conflict).

### 2. Analysis

#### i. Whether Exhaustion is Jurisdictional or Prudential

The parties each set forth distinct Ninth Circuit cases in support of their positions on this

4

1   issue, with Sheikh arguing that exhaustion is prudential in the context of section 1421(c), and the
2   government arguing it is jurisdictional.  The Court finds that exhaustion is prudential in the
3   context of 8 U.S.C. § 1421(c).  *See Eche v. Holder*, 694 F.3d 1026, 1028 (9th Cir. 2012); *see also*
4   *Shweika v. Dep't of Homeland Sec'y*, 723 F.3d 710, 714-720 (6th Cir. 2013).  The government
5   argues that *U.S. v. Hovsepian* stands for the contrary proposition that exhaustion is jurisdictional
6   here.  359 F.3d 1144, 1162 n. 15 (9th Cir. 2004).  *Hovsepian* is not, however, directly on point.
7   The cited portion of *Hovsepian* is dicta and clearly contradicted by the more recent decision in
8   *Eche*.  In *Eche*, the Ninth Circuit squarely addressed the question of whether exhaustion of
9   administrative remedies is prudential or jurisdictional in the context of section 1421(c),
10  determining that it was prudential.  *See Eche*, 694 F.3d at 1028.

### ii. Prudential Exhaustion

12  The Court next addresses whether exhaustion should be required here.  Sheikh argues that
13  the futility exception applies in this case, and thus contends he should not be required to exhaust
14  his administrative remedies.  Specifically, Sheikh points to a purported conflict between an
15  applicable USCIS regulation and the Immigration and Nationality Act—with the former
16  purportedly prohibiting absences of exactly six months or more, and the latter prohibiting
17  absences of only more than six months.  Sheikh argues this conflict renders an administrative
18  appeal futile because USCIS is bound by its own regulation, which requires USICIS to provide
19  Sheikh with the same answer he already received—namely, that his purported absence of exactly
20  six months disrupted his continuity of residence.

21  As a threshold matter, Sheikh's ability to rely on the purported conflict depends on his
22  2013 trip having lasted *exactly* six months.  The question thus arises: how to calculate six months
23  where, as here, the governing statute specifies the relevant time period in terms of months.  *See* 8
24  U.S.C. § 1427(b).  First, years are calculated based on the calendar, and the law does not typically
25  recognize fractions of a day.  *See Lagandaon v. Ashcroft*, 383 F.3d 983, 990-93 (9th Cir. 2004).
26  "Thus, for example, the span from January 1st to December 31st constitutes one year, regardless
27  of the time of day on January 1 or December 31 that the relevant events occurred."  *Id.* at 992.
28  Further, "the first legally significant date, the *terminus a quo*, is included. . . .  [Thus,] a year runs

5

1  from one date to the *prior* date in the next year—365 days, the equivalent of the period from

2  January 1 to December 31, and *not* from January 1 to the next January 1, which would be 366

3  days, or a year and a day." *Id*. (citation omitted, emphasis in original).  Second, the Supreme Court

4  determined that an eighteen month statutory period ran from November 1, 1819 to April 30, 1821.

5  *See Griffith v. Bogert*, 59 U.S. 158, 162-65 (1855).  Third, months may be defined as calendar

6  months where, as here, a governing statute specifies a time period in terms of months.  *See, e.g.*,

7  *Williams v. Astrue*, 324 Fed. Appx. 618, 619 (9th Cir. 2009).

8      Using the method for counting time described above, for Sheikh's trip to have lasted

9  exactly six months, having started on March 3, 2013, it would have ended on September 2, 2013.

10  Here, it ended on September 3, 2013 and thus lasted six months and a day.  As such, Sheikh's trip

11  did not last the precise amount of time necessary to raise the purported conflict between 8 C.F.R. §

12  316.5(c) and 8 U.S.C. § 1427(b) that may have justified an exception to the exhaustion

13  requirement on the basis of futility.

14      Sheikh argues that the time period in question begins on March 4, not March 3, pursuant to

15  Federal Rule of Civil Procedure 6(a).  (Dkt. No. 28.)  Using March 4 as the starting date, Sheikh

16  contends he was out of the country six months exactly.  Sheikh's argument does not persuade

17  given the Ninth Circuit's use of a common sense approach to calculating periods of years (or, in

18  this case, months) in the immigration context, *Lagandaon v. Ashcroft*, 383 F.3d at 992, precedent

19  which petitioner admittedly requests that this Court ignore.  The Court declines to do so.  Sheikh

20  must exhaust his administrative remedies at USCIS before seeking judicial review of the denial of

21  his application for naturalization from this Court.

22  **IV.   CONCLUSION**

23      For the foregoing reasons, the Court **GRANTS** the government's motion to dismiss for

24  failure to exhaust administrative remedies.  Dismissal without prejudice is appropriate where, as

25  here, the plaintiff has not asked for a stay and has not demonstrated grounds to excuse the

26  exhaustion requirement.  *See Leonardo v. Crawford*, 646 F.3d 1157, 1160-61 (9th Cir. 2011); *see*

27  *also Jariwala v. Napolitano*, 2011 WL 1260228, at *3 (N.D. Cal. Apr. 4, 2011) (granting motion

28  to dismiss without prejudice for failure to exhaust administrative remedies).  As Sheikh has neither

requested a stay nor justified application of the futility exception, the case is **DISMISSED WITHOUT PREJUDICE**.

This Order terminates Docket Number 17.

The Clerk shall administratively close the case file.

**IT IS SO ORDERED.**

Dated: December 1, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**